**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IVAN H.V.,

Petitioner,

v.

TODD BLANCHE, *Attorney General*;

MARKWAYNE MULLIN, *Secretary of Homeland Security*;

DAVID VENTURELLA, *Acting Director of Immigration & Customs Enforcement*;

MARCOS CHARLES, *Acting Executive Associate Director for Enforcement and Removal Operations;*

U.S. DEPARTMENT OF HOMELAND SECURITY;

U.S. IMMIGRATION & CUSTOMS ENFORCEMENT;

DAVID EASTERWOOD, *Field Office Director for Enforcement and Removal Operations*; and

JOEL BROTT, *Sheriff of Sherburne County*,

Respondents.

Civil No. 26-4612 (JRT/LIB)

**MEMORANDUM OPINION AND ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

---

Elizabeth Sue Eckholm, Joseph T. Heegaard, and Nicholas Ratkowski, **RATKOWSKI LAW PLLC,** 332 Minnesota Street, Suite W1610, Saint Paul, MN 55101, for Petitioner.

David W. Fuller and Derek Ganzhorn, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Federal Respondents.

**BACKGROUND**

Petitioner Ivan H.V. is a citizen of Mexico who entered the United States in 2002, when he was five years old, without inspection. (Pet. Writ. of Habeas Corpus ("Pet.") ¶ 62, Oct. 26, 2026, Docket No. 1.) In 2016, Petitioner obtained deferred action through the Deferred Action for Childhood Arrivals ("DACA") program. (*Id.* ¶ 63.) In or around 2021, following a conviction for driving under the influence, United States Citizenship and Immigration Services did not renew his DACA. (*Id.* ¶ 64.)

On September 22, 2026, Deputy Brady Gustafson of the McKenzie County, North Dakota, Sheriff's Office stopped Petitioner in Watford City, North Dakota, for driving without headlamps. (Decl. of Dustin J. Plummer ("Plummer Decl.") ¶ 4, Ex. A at 2, Oct. 28, 2026, Docket No. 6; Pet. ¶ 67.) Petitioner could not produce any form of identification. (Plummer Decl. ¶ 4, Ex. A at 2.) Gustafson proceeded to contact Immigration and Customs Enforcement and Enforcement and Removal Operations ("ICE/ERO"). (*Id.*) ICE/ERO Officer Johnston then conducted a telephonic interview of Petitioner for identification and performed an immigration inspection. (*Id.*) After running a records check on Petitioner, Officer Johnston determined that Petitioner did not have

any immigration documentation to remain in the United States. (*Id.*) Petitioner's address was identified as being in Mitchell, Nebraska. (*Id.*, Ex. A at 1.)

Officer Johnston then determined that a warrantless arrest of Petitioner was justified because of "the geographic challenges and the fact that the distance between the nearest ICE office and where [Petitioner] resides . . . ." (*Id.*, Ex. A at 2.) Officer Johnston directed Gustafson to place Petitioner under arrest for immigration violations. (*Id.*) Gustafson complied, arrested Petitioner, and transported him to McKenzie County Correctional facility in Watford City, North Dakota. (*Id.*) At the time he was arrested, Petitioner had never been in immigration custody, and he had never been placed in removal proceedings. (Pet. ¶ 65.)

On September 23, 2026, Petitioner was turned over to ICE Custody. (Plummer Decl. ¶ 4, Ex. A at 2; Pet. ¶ 71.) Petitioner was issued an I-200 administrative warrant and a Notice to Appear ("NTA"), both dated September 23, 2026. (Plummer Decl. ¶ 4, Exs. B & C.) ICE transported Petitioner to the Sherburne County Jail in Elk River, Minnesota, where he remains detained. (Pet. ¶ 75.)

**DISCUSSION**

"[A]bsent suspension" by Congress, the Constitution guarantees that the "writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1, § 9, cl. 2). District courts can provide habeas relief to persons detained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3).

Respondents[1] argue that Petitioner's detention is lawful and mandatory under 8 U.S.C. § 1225(b)(2)(A). Respondents additionally argue that they effectuated a valid warrantless arrest of Petitioner, in compliance with 8 U.S.C. § 1357(a)(2). Federal immigration officers may "arrest any [noncitizen] in the United States" without a warrant if they have "reason to believe that the [noncitizen] . . . is in the United States in violation of any such law or regulation **and** is likely to escape before a warrant can be obtained for [their] arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). The Eighth Circuit has interpreted "reason to believe" to mean "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Respondents make no argument as to whether an arresting officer—be it the North Dakota Officer Gustafson who carried out the physical arrest, or ICE Officer Johnston who ordered the arrest—had any reason to believe Petitioner was in the country in violation of any law or regulation. However, the record reflects that Petitioner confirmed that he was in the United States without legal status during his telephonic examination with Officer Johnston. The Court concludes that this evidence is likely sufficient to establish an officer had a reason to believe that Petitioner was in violation of immigrations laws.[2] (Plummer Decl. ¶ 4, Ex. A at 2.)

---

[1] "Respondents" here includes only Federal Respondents, as no response was submitted on behalf of Joel Brott.

[2] The Court notes that inability to provide a form of identification is not on its own grounds to assume someone is in the country without permission. Respondents could have provided a

Having concluded that Respondents likely met the burden of showing an officer had reason to believe that the Petitioner was in the United States in violation of a law or regulation, the first part of the § 1357(a)(2) analysis, the Court turns to the second part of the analysis. The Court considers: (1) whether Petitioner was likely to escape before a valid warrant could be obtained and executed and (2) whether it was likely that ICE officers would be able to locate Petitioner after obtaining a warrant to arrest him. *E.g.*, *Ivan F.M.*, Civ. No. 26-4012, 2026 WL 2935475, at *2-3 (D. Minn. Sept. 30, 2026).

Respondents contend that Petitioner was likely to escape prior to their ability to obtain and execute a valid warrant because: (1) at the time of arrest he was in an operable motor vehicle; (2) the existence of "geographic challenges" due to the distance between the nearest ICE office and Petitioner's residence; and (3) Petitioner's failure to regularize his status. The Court is unpersuaded by all three points.

**First**, the Court is not persuaded that being inside an operable motor vehicle alone establishes the likelihood of escape. *See Jany W.G.C. v. Easterwood*, Civ. No. 26-3486, 2026 WL 2364413, at *2 (D. Minn. Aug. 14, 2026) (expressing skepticism that mere access to a vehicle gives rise to probable cause that a noncitizen is likely to flee). In *Jany W.G.C.*, the Court concluded that the petitioner's attempt to flee on foot after seeing ICE officers approaching gave rise to probable cause that petitioner was likely to flee. *Id.*

declaration from Officer Gustafson or Officer Johnston as to their state of mind, but the Respondents did not.

Respondents rely heavily on *Quintana* as presenting an alleged similar scenario, but the petitioner there provided the arresting officers with biographical information that did not yield any matching records. 623 F.3d at 1241. Here, unlike the petitioners in *Jany* and *Quintana*, Petitioner stopped, provided answers about his biographical information that yielded a matching record, and stayed throughout the telephonic interview with ICE Officer Johnston. The Court concludes that being inside an operable motor vehicle, without some other factors indicating the Petitioner was going to flee, is not a sufficient reason to establish that Petitioner was likely to flee.

**Second**, according to Respondents' own submissions, and briefing, Respondents had an address for Petitioner at the time of arrest. Respondents do not argue that they would not be able to locate Petitioner if they had waited to execute a valid warrant. They also do not contend that the address was invalid, but rather that Petitioner's residence was too far from the nearest ICE office. The warrantless arrest exceptions of § 1357(a) were not enacted for and should not be used to promote the convenience of an arresting officer.[3] Nor do Respondents cite any authority supporting the proposition that the mere inconvenience of distance can justify a warrantless arrest. The Court concludes that the purported "geographic challenge" does not establish that Petitioner was likely to flee.

[3] The protections of the Fourth Amendment against unreasonable searches and seizures extend to citizens and noncitizens alike. *Quintana*, 623 F.3d at 1239; *see also Almeida-Sanchez v. United States*, 413 U.S. 266 (1973) (concluding that search of Mexican Citizen's car lacked probable cause, thus violating the Fourth Amendment's prohibition against unreasonable searches and seizures).

**Third**, Respondents argue that Petitioner's failure to regularize his status or make himself known to immigration authorities constitutes another reason to believe he was likely to flee. Removability alone is not a reason to believe that a noncitizen is likely to escape. *See Hector J.A.S. v. Shea*, Civ. No. 26-2242, 2026 WL 1243500, at *3 (May 6, 2026) ("To hold that a noncitizen is likely to escape merely because they are removable would effectively collapse § 1357(a)(2)'s two distinct requirements into one . . . ."). Furthermore, Respondent's own records show that Petitioner had several DACA approvals (Plummer Decl. ¶ 4, Ex. A at 2), for which he provided the Department of Homeland Security with his fingerprints, photograph, and home address (Pet. ¶ 63). These actions are not consistent with a noncitizen intending to evade detection.

In sum, the record does not establish that Petitioner was likely to escape before a warrant could be issued. The record also does not establish that ICE officers would have been unable to locate Petitioner after obtaining a warrant to arrest him. Respondents failed to satisfy the requirements for arresting a noncitizen without a warrant under 8 U.S.C. § 1357. The Court concludes that Respondents therefore improperly arrested and detained Petitioner under 8 U.S.C. § 1225(b)(2).

Accordingly, Petitioner's detention is unlawful. And as in other similar cases, the Court concludes that the appropriate remedy is release from custody. *See, e.g.*, *Ivan F.M.*, 2026 WL 2935475, at *3.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Ivan H.V.'s Petitioner for Writ of Habeas Corpus (Docket No. [1]) is **GRANTED IN PART**, as follows:

1. Respondents shall **RELEASE** Petitioner from custody as soon as practicable, and **no later than 48 hours from the filing of this Order**.
   a. Respondents shall provide Petitioner's counsel with at least 12 hours' notice of the time and location of Petitioner's release.
2. Respondents must release Petitioner with all personal effects, such as driver's licenses, passports, or immigration documents, and **without conditions** such as location tracking devices.
3. The parties shall provide the court with a status update concerning the status of Petitioner's release by **no later than 4:00 p.m. on November 5, 2026**. Further, the parties shall advise the Court whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation by **no later than 4:00 p.m. on November 9, 2026**.

DATED: November 2, 2026
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge